[Civ. No. 23612. Fourth Dist., Div. Two. Apr. 24, 1981.]

ANN L. POWELL, as Conservator, etc., Plaintiff and Respondent, v. PREMIER INSURANCE COMPANY, Defendant and Appellant.

338

COUNSEL

Fonda & Garrard, Veatch, Snow, Carlson, Quimby & Gunsaulus, Peter Fonda and Donald A. Garrard for Defendant and Appellant.

Richard J. Eller for Plaintiff and Respondent.

OPINION

**KAUFMAN, Acting P. J.**—Plaintiff Ann L. Powell, conservator of the person and estate of Debra Lee Powell, instituted this declaratory relief action, inter alia, to determine whether a liability insurance policy issued by defendant Premier Insurance Company affords coverage for the permissive driver of a vehicle involved in an accident in which the conservatee suffered serious personal injuries and, if so, the amount of the coverage and whether it was primary or excess. The judgment of the trial court declared that Premier's policy does afford coverage in the amount of $300,000 excess to $100,000 coverage afforded by a Farmers Insurance Group policy. Premier appeals from that portion of the judgment determining its policy affords $300,000 coverage for the permissive user. It is conceded, however, that if the permissive user is insured under the policy, the amount of coverage is $300,000.

The accident occurred on January 18, 1977, at about 1:30 a.m. when Debra Lee Powell, the conservatee, sustained serious injuries as a passenger in a 1976 Datsun 280Z sportscar driven by Harry Marvin Hatch. The vehicle was owned by Cenval Leasing, a California corporation, and leased to Lenders Diversified Services, dba Ledisco Financial Services (Ledisco).[1] At the time of the accident, Hatch was driving the vehicle as a permissive user of Ledisco. Premier's policy was a general comprehensive liability policy including "garage" coverage and a "Lessor's Protection Plan." Its bodily injury liability limit with respect to automobile coverage appears to be $300,000 for any one occurrence. It was issued to Cenval in 1976. Farmers' policy was issued to Hatch and Ledisco; it provides a limit for bodily injury liability of $100,000 as to any one person.

Plaintiff, as conservator of Debra Lee Powell, filed a personal injury action against Hatch, Cenval and other named defendants seeking damages in excess of $400,000. That case is now pending in the Orange County Superior Court. Plaintiff then instituted this action for declaratory relief.

At trial Premier contended that as authorized by Insurance Code section 11580.1, subdivision (d)(2)[2] (hereafter referred to simply as

---

[1]Cenval purchased the car from Shorecrest Leasing Company in 1976, subject to an existing lease between Shorecrest and Ledisco. As a result of the purchase agreement, all the owner's rights in the lease were assigned to Cenval.

[2]All further statutory references will be to the Insurance Code unless otherwise specified.

subdivision (d)(2)), its policy excluded coverage for permissive users such as Hatch. The trial court determined that Cenval was not in the business of selling automobiles within the meaning of subdivision (d)(2) and that subdivision of the statute was therefore inapplicable. On appeal Premier contends that the trial court erred in so determining because it was bound by a stipulation of facts between the parties that conclusively established that Cenval was in the business of selling automobiles. Premier also contends that the provision in its policy excluding coverage for Hatch as a permissive user was authorized by subdivision (a) of section 11580.1. Premier's contentions are not meritorious. Accordingly we affirm the judgment.

*Exclusion Not Authorized by
Subdivision (d)(2) of Section 11580.1*

The pertinent provision in Premier's policy reads: "In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions: [¶] 1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages . . . up to the amount of the applicable financial responsibility limit, no damages . . . are collectible under this policy." "'[G]arage customer'" is defined as meaning "any person other than an employee, director, stockholder, partner or member of the named insured or a resident of the same household as the named insured."

Hatch, the permissive user, comes within the definition of a "garage customer," and the Farmers' policy affords valid and collectible insurance in excess of the minimum required by the financial responsibility law.[3] The quoted policy provision would, therefore, exclude coverage for Hatch if the provision is lawful.

However, subdivision (b)(4) of section 11580.1 mandates that every policy of automobile insurance to which the section applies must afford

---

[3]The financial responsibility law is codified in Vehicle Code sections 16000-16560. Subdivision (a) of section 16056, provides in pertinent part: "No policy . . . shall be effective under Section 16054 unless . . . the policy . . . is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and . . . to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident . . . ."

coverage to permissive users to the same extent that coverage is afforded to the named insured. Thus, if subdivision (b)(4) is applicable, the restrictive policy provision is invalid because it would be violative of the statutory mandate.

That brings us to subdivision (d)(2) which provides in relevant part: "Notwithstanding the provisions of [subdivision (b)(4)] . . . *the insurer and any named insured may . . . agree* as to either or both of the following limitations, such agreement to be binding upon every insured to whom such policy applies and upon every third party claimant:

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(2) That with regard to any such policy issued to a named insured *engaged in the business of selling*, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, *coverage shall not apply to any person other than the named insured* or his agent or employee, except to the extent that the limits of liability of any other valid and collectible insurance available to such person are *not* equal to the limits of liability specified in subdivision (a) of section 16056 of the Vehicle Code [in this case $15,000, (see fn. 3, *ante*)]." (Italics added.)

In its memorandum of intended decision the trial court stated: "Based upon the stipulated facts, the contents of the leasing agreement, Premier's policy, and the other documents submitted, the Court finds that Cenval and Ledisco were in the business of leasing automobiles. Hence, they were not included within the class of operations contained in Insurance Code Section 11581.1(d)(2) [*sic*] . . . . The fact that Cenval bought and sold cars as an incident of its leasing business does not bring it within the exception afforded to persons engaged in the business of 'selling' automobiles. . . . Premier's policy is labeled 'Lessor's Protection Plan' for an 'Estimated Annual No. Leased Vehicles' of 9,003. This is strong evidence that Premier was insuring a leasing operation and not a selling operation. True, the policy contained 'Garage Insurance' but under 'VI. Additional Definitions,' it says 'garage' means an *automobile leasing company*, automobile sales agency and repair shop.' (Emphasis added.)" (Original italics.)

The parties had filed with the court a stipulation of facts apparently with the idea of submitting the case on the stipulation together with the Premier and Farmers insurance policies and the vehicle lease. The stip-

ulation of facts included the following: "That on January 18, 1977, Defendant, Cenval Leasing, was a California Corporation *engaged in leasing and selling automobiles,* financing, buying, buying subject to existing leases of automobiles ..." (italics added); that the Farmers policy afforded primary coverage and the Premier policy excess coverage; that neither Hatch nor Ledisco were agents or employees of Cenval Leasing; and that Hatch was a permissive user of the vehicle on the date of the accident.

When the case came on for trial the court was apparently troubled by a statement in plaintiff's closing trial brief to the effect that an investigation into the nature of Cenval's business subsequent to the stipulation had disclosed facts not previously known to plaintiff that would assist the court in resolving the question whether or not Cenval was engaged in the business of selling automobiles within the meaning of subdivision (d)(2). In response to the court's inquiry about this aspect of the case, counsel for plaintiff indicated he was prepared to submit further evidence and declarations establishing that Cenval was primarily in the business of leasing automobiles, not selling them.

Premier's attorney reminded the court of the stipulated facts and stated that because of his reliance on the stipulation, he had no witnesses available and was not prepared to present proof that Cenval was engaged primarily in selling automobiles.

At the court's request, counsel attempted, in a nonspecific way, to indicate the nature of the proof he would have offered. As best we understand it, counsel generally stated that although the document involved in the case at bench happened to be a lease, Cenval also engaged in selling automobiles, that some of the transactions were complex and, perhaps counsel intimated that many transactions were, in commercial reality, sales financed by leasing. When the court asked counsel what his conclusions were, whether Cenval was primarily in the business of selling or primarily in the business of leasing, counsel responded: "Primarily in the business of selling and leasing and financing automobiles." Later the court asked counsel whether Cenval was registered with the Department of Motor Vehicles as a dealership, to which counsel replied that he was not sure that it was.

Finally, the court apparently despaired of having the matter clarified and indicated to plaintiff's attorney that he should continue with his argument. Plaintiff's counsel then argued that the burden of proof of

establishing the factual basis to come within subdivision (d)(2) was upon Premier and that all of the facts before the court indicated that Cenval was in the business of leasing automobiles, not selling them. He pointed out that the only document in evidence with respect to the particular transaction was clearly a lease and urged: "There's nothing before the Court at this time to demonstrate this company was primarily involved or engaged in the business of selling motor vehicles within the intent of this section."

In response counsel for Premier argued in pertinent part: "My only comment, your Honor, is that we don't have additional proof mainly because of the stipulated facts. Counsel has stipulated we are in the business of selling automobiles. I argue that's the primary business of the company." He concluded: "But they [Cenval] are primarily in the business of selling and the financing and the leasing of automobiles and I'll submit the matter on the trial briefs, your Honor."

Plaintiff's counsel also agreed to submit, with the parting shot: "The stipulation does not say primary, nor does it say business, it says they are engaged in leasing and selling cars. ... [T]he evidence before the court indicates very clearly that they were primarily a leasing company, not a selling company. There's no evidence to the contrary."

Whereupon, the court took the matter under submission.

It may have been that counsel for Premier was lulled by the stipulation and, thus, was not prepared to offer evidence concerning the nature of Cenval's business, but having failed to request a continuance for the purpose of martialling its proof and having submitted the matter on the trial briefs with the evidence in the state it was, Premier has no legitimate cause for complaint in respect to this episode.

■ Counsel for plaintiff was correct that the stipulation did not conclusively establish that Cenval was engaged in the business of selling automobiles within the meaning of subdivision (d)(2). The decided cases establish that to bring subdivision (d)(2) into play the business activity of the insured must have been one of those enumerated in the statute and that something more is required than that the insured engages in selling automobiles incident to a principal business not enumerated in the statute. (See and cf. *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 55-56 [109 Cal.Rptr. 698, 513 P.2d 922]

(including fn. 12); *Great American Ins. Co. v. Globe Indem. Co.* (1970) 8 Cal.App.3d 938, 945 [87 Cal.Rptr. 653].)

All the evidence before the court indicated that Cenval's primary business was auto leasing. The part of the policy relating to Cenval's liability arising out of its disposition of vehicles is entitled "LESSOR'S PROTECTION PLAN"; the purpose of its occupancy of premises is stated in the declarations to be: "AUTO LONG TERM LEASING"; and under a heading "Estimated Annual No. Leased Vehicles" appears the number "9,003." In addition, the rate per vehicle refers to "Leased Vehicle," and the policy contains an indorsement that appears to exclude coverage for automobiles "RELEASED TO OTHERS BY THE INSURED UNDER ANY FORM OF AN AUTOMOBILE SALES AGREEMENT." Given that Cenval's primary business was auto leasing, the stipulation that it was "engaged in leasing and selling automobiles" is fairly susceptible to the interpretation that its sales of automobiles were only incidental to its leasing business. Indeed, construing the wholly documentary evidence independently as Premier asserts is our duty under *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385], we agree with the trial court's assessment and interpretation of the stipulation. The trial court did not depart from the stipulated facts; in view of the other evidence, the stipulation was simply inadequate to establish conclusively that Cenval was engaged in the business of selling automobiles within the meaning of subdivision (d)(2).

Contrary to Premier's arguments, *Cal-Farm Ins. Companies v. Fireman's Fund American Ins. Companies* (1972) 25 Cal.App.3d 1063 [102 Cal.Rptr. 568], is not inconsistent with the *Metz* and *Great American* cases and does not indicate a judgment in Premier's favor in this case. In *Cal-Farm* the trial court determined as a matter of fact that the insured was in the business of selling automobiles even though the written instrument utilized was in the form of a lease. The appellate court upheld the factual determination of the trial court. In the case at bench no evidence was presented in the trial court to establish that Cenval's leases were in fact a method of effecting sales of automobiles. Moreover, that would appear highly unlikely in view of the fact, as previously observed, that Premier's policy includes an indorsement that reads: "IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT EVERY LOSS ARISING OUT OF THE USE OF OR CONDITION OF AN AUTOMOBILE RELEASED TO OTHERS BY THE INSURED UNDER ANY FORM OF AN AUTOMOBILE SALES AGREEMENT IS EXCLUDED UNDER THIS POLICY."

*Exclusion Not Authorized by*
*Subdivision (a) of Section 11580.1*

Alternatively, Premier contends that the policy provision quoted earlier excluding coverage where there is other valid and collectible insurance sufficient to satisfy the financial responsibility law, is authorized by subdivision (a) of section 11580.1 (hereafter referred to simply as subdivision (a)), which provides: "No policy of automobile liability insurance described in Section 16054 of the Vehicle Code ... shall be issued or delivered in this state ... unless it contains the provisions set forth in subdivision (b) [subparagraph (4) of which requires coverage for permissive users 'to the same extent that insurance is afforded to the named insured']. However, *none of the requirements of subdivision (b) shall apply* to the insurance afforded under any such policy ... *(2) if such policy contains an underlying insurance requirement*, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code." (Italics added.)

Premier contends that its policy "contains an underlying insurance requirement" within the meaning of subdivision (a). Plaintiff contends to the contrary but initially urges that this contention of Premier should not be considered on appeal, because it was not raised in the trial court.

██ We do not agree with plaintiff that Premier is precluded from advancing this contention on appeal because it was not presented below. In her complaint for declaratory relief, plaintiff did not limit the relief sought to a declaration that subdivision (d)(2) of section 11580.1 was inapplicable. She generally sought "a declaration that the amount of coverage afforded to HARRY MARVIN HATCH (Deceased) is not limited by Insurance Code Section 11580.1 as claimed by Defendants, ..." ██ Moreover, although a party may not for the first time on appeal present a new theory that "contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial ...," (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; *Cramer* v. *Morrison* (1979) 88 Cal.App.3d 873, 887 [153 Cal.Rptr. 865], and cases there cited; *Garcia* v. *County of Santa Clara* (1978) 87 Cal.App.3d 319, 326, fn. 3 [151 Cal.Rptr. 80]), the rule does not apply when the facts are undisputed and the party merely raises a new question of law. (*UFITEC, S.A.* v. *Carter* (1977) 20 Cal.3d 238, 249, fn. 2 [142 Cal.Rptr. 279, 571 P.2d 990]; *Cramer* v. *Morrison, supra; Garcia* v. *County of Santa Clara, supra.)*

■ Plaintiff asserts that Premier's contention involves the determination of factual issues, but she does not specify the factual issues to which she refers, and we fail to perceive any.

Premier points out that Cenval's automobile leases require the lessee to carry public liability insurance insuring both the lessee and Cenval as an additional insured in an amount in excess of the minimum required by the financial responsibility law. Of course, subdivision (a) requires that "such policy" contain the underlying insurance requirement, not a lease agreement. However, there is in the policy an indorsement to the "LESSOR'S PROTECTION PLAN" that Premier asserts establishes the underlying insurance requirement by reference to the lease. It reads as follows: "In consideration of the premium charged, it is agreed that the policy to which this endorsement is attached is extended to pay on behalf of the insured all sums which the insured, hereafter called the lessor, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an error or omission in effecting or maintaining insurance on automobile(s) leased to others under long term lease agreements of 6 months or more; or as respects an automobile loaned by the lessor to a lessee as a 'temporary substitute automobile', which error or omission *results in no specific valid, or sufficient insurance being available to the lessee as required in the lease.*" (Italics added.)

■ "'Underlying insurance' is any other insurance purchased by the insured which covers the same losses and which will be primarily liable therefor." (*National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 130 [125 Cal.Rptr. 513].) As between insurance policies obtained by a lessor and lessee of a vehicle under a lease of six months or more, primary or underlying coverage with respect to a loss arising out of the use of the vehicle by a permissive user of the lessee is afforded by the lessee's policy. (§ 11580.9, subd. (b).) Thus, the insurance required to be obtained by the lessee under Cenval's lease does constitute underlying insurance. The only remaining question is whether such insurance is "required by" Premier's policy.

In arguing the affirmative, Premier places considerable reliance on the opinion in the decision of *National Indemnity Co.* v. *Manley, supra,* 53 Cal.App.3d at page 131. There, the appellant asserted that the requirement in an indorsement to the policy that trailers be rented only to persons having automobile liability insurance constituted an underlying insurance requirement in the policy satisfying subdivision (a) of section 11580.1. Ultimately the court rejected the contention because it con-

cluded under the statutes then in effect that such insurance obtained by the lessee would not constitute primary or underlying insurance. However, as to the "requirement" aspect of the problem, the court said: "On its face, this provision of the special endorsement appears to require underlying insurance coverage." (53 Cal.App.3d at p. 131.) However, the indorsement relied on by the appellant in the *National Indemnity* case was altogether different than that relied on by Premier in the case at bench. The indorsement in that case provided: "'It is understood and agreed that it is warranted by the named insured that trailers rented to others will be rented only to persons having automobile liability insurance which will be in force for the term of rental.'" (*Id.*, at p. 129.)

■ We have no doubt that both Premier and Cenval anticipated that all lessees of automobiles would carry liability insurance as required in the form of lease generally used by Cenval. However, that expectation does not satisfy the statutory prerequisite that the insurance policy contain an underlying insurance requirement. We are unable to interpret the reference to the lease requirement in the quoted indorsement as constituting a requirement by the policy of underlying insurance. There is simply no requirement in the indorsement or anywhere else in the policy that there be underlying insurance. Far from requiring underlying insurance, the indorsement provides Cenval public liability insurance for an error or omission on its part in failing to see that the lessee of an automobile carries liability insurance. In other words, the indorsement expressly contemplates a situation where such underlying insurance is lacking. In that event the insured is covered for any liability it might have, up to the limit specified, for negligence on its part in failing to see that the lessee obtained liability insurance, but that insurance coverage is altogether different than automobile liability insurance which is what is required by the financial responsibility law.

### Disposition

No error appears. The judgment is affirmed.

Morris, J., and Garst, J.,* concurred.

A petition for a rehearing was denied May 13, 1981, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1981.

---

*Assigned by the Chairperson of the Judicial Council.