[No. A019236. First Dist., Div. Five. Aug. 28, 1984.]

MISSION INSURANCE COMPANY,
Plaintiff, Cross-defendant and Respondent, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant, Cross-complainant and Appellant.

**COUNSEL**

Clifford B. Mitchell, Michael J. Murray and Mitchell, Dedekam & Angell for Defendant, Cross-complainant and Appellant.

Michael F. Malloy, W. Timothy Needham and Janssen, Malloy & Marchi for Plaintiff, Cross-defendant and Respondent.

OPINION

**LOW, P. J.**—Hartford Accident and Indemnity Company (Hartford) and Mission Insurance Company (Mission) both issued automobile liability policies covering the same leased trailer. Mission's insured, Redwood Construction Company (Redwood), leased the trailer to Hawkey Transportation Company (Hawkey). Hawkey was insured by Hartford. The trailer was involved in an accident with a motorcycle in which the motorcycle driver was killed. Both insurance companies contributed to the settlement of the wrongful death action while reserving their rights to contest which insurance policy was primary and which policy provided excess coverage. In the declaratory relief action, the trial court held that the conclusive presumption of Insurance Code section 11580.9, subdivision (b)[1] applies, and determined that Hartford was the primary insurer and that Mission was excess only. Hartford appeals that decision and contends (1) section 11580.9, subdivision (b) does not apply as Mission's insured was not "engaged in the business" of leasing trailers; (2) since the trailer was "described and rated" in the Mission policy, it is presumed to be primary pursuant to section 11580.9, subdivision (d); (3) the trial court erred in relying on the parties' intentions under the lease agreement; and (4) upon reversal, it is entitled to attorneys' fees incurred in defending the wrongful death action.

On July 6, 1976, a tractor owned by Hoagland Trucking Company and driven by Franklin Rice was pulling a trailer owned by Redwood and leased to Hawkey. Hoagland Trucking Company was operating under a subhaul agreement with Hawkey to transport woodchips to a pulp mill in Humboldt County when the tractor/trailer rig collided with a motorcycle. All the parties settled the wrongful death action, with Mission contributing $100,000 of its policy limit of $250,000 and Hartford contributing $171,000 of its policy limit of $250,000.

Several months before, on January 1, 1976, Redwood had leased the trailer to Hawkey for a fee of $400 per month under the following conditions: (1) Hawkey return the trailer in the same condition as received; (2) Hawkey furnish all general liability, collision and property damage protec-

---

[1] All section references are to the Insurance Code unless otherwise indicated.

tion; and (3) Hawkey furnish a certificate of insurance for all general liability, collision and property damage.

Frank Hawkey, manager of Hawkey, stated that in the year of the accident, 1976, Hawkey rented one or two trailers from Redwood. He also stated that he had leased trailers from Redwood on a couple of other occasions. These leases were common in the industry.

James Cyphers, general manager of Redwood, stated that the company leased trailers, at most, five times per year; that there was no profit in this arrangement; that the monthly payments covered only wear and tear; and the purpose for the lease was merely an accommodation to other companies, which would in turn lease trailers to Redwood when needed.

Both insurers admitted liability and coverage. However, they rely on different sections in the Insurance Code in support of their argument that the other company is primarily liable for the loss.

Mission argued and the trial court agreed that Redwood was "engaged in the business of renting or leasing commercial vehicles without operators" and that its policy was excess pursuant to section 11580.9, subdivision (b). That section provides: "(b) Where two or more policies are applicable to the same loss, *and one of such policies affords coverage to a named insured engaged in the business of renting or leasing commercial vehicles without operators*, as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or the leasing of any other motor vehicle for six months or longer, *it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss* covering such person as a named insured or as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall be primary and the other policy or policies shall be excess." (Former § 11580.9, italics added.)

The trial court attached no significance to the fact that the leasing operations were only a small part of Redwood's business and that Redwood did not make a profit on the leases. Since Hawkey, the lessee, intended to profit

from the use of the trailers, the lease was for a commercial purpose and section 11580.9, subdivision (b) was applicable.

The trial court rejected Hartford's argument that the trailer was a rated or described vehicle in the Mission policy and, as such, that policy would be primary pursuant to section 11580.9, subdivision (d). That section provides: "(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, *it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.*" (Italics added.)

■ Where two automobile insurance policies provide coverage, the terms of sections 11580.8 and 11580.9 will conclusively determine which policy is the primary policy and which is excess. (See *Mission Insurance Co.* v. *Hartford Insurance Co.* (1984) 155 Cal.App.3d 1199, 1209 [202 Cal.Rptr. 635].) These sections reflect a legislative effort to reduce the volume of disputes within this area of primary, excess or sole coverage between the injured parties, insureds and insurers. (*Lumbermens Mutual Casualty Co.* v. *Agency Rent-A-Car, Inc.* (1982) 128 Cal.App.3d 764, 767 [180 Cal.Rptr. 546]; *Transport Indemnity Co.* v. *Alo* (1981) 118 Cal.App.3d 143, 147 [172 Cal.Rptr. 394].)

■ Hartford argues that Redwood was engaged in leasing trailers only in a "casual" way and that such leases are covered by section 11580.9, subdivision (d). We disagree. The fact that the leasing arrangements were only a small part of Redwood's business is not determinative. If it can be reasonably stated that the transaction involved was a commercial transaction, then section 11580.9, subdivision (b) will apply. (See *Transport Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d at pp. 148-149.) Even if Redwood does not make a profit on the leasing of its trailers, that is irrelevant. We look to the actual use of the trailers by Hawkey. (*Government Employees Ins. Co.* v. *Carrier Ins. Co.* (1975) 45 Cal.App.3d 223, 228 [119 Cal.Rptr. 116].) Hawkey intended and did use the trailers for financial gain, i.e., to fulfill a subhaul agreement to transport woodchips. Hawkey's decision to lease the trailers from Redwood was based on a profit motive. It therefore cannot be denied that, at least from Hawkey's perspective, the leasing of the trailers was a commercial transaction. Furthermore, Redwood's decision to lease the trailers to another trucking firm, albeit only at the cost of maintenance, was also a commercial decision in every sense of the word. This accommodation was insurance in the event Redwood was

caught short and would need to lease trailers from other firms. Redwood's motive was not charitable, but was designed to ensure profitability. (See *Transport Indemnity Co.* v. *Alo, supra,* at p. 148.) The purpose in shifting the risk of damage from the owner's policy to the commercial lessee's policy recognizes the commercial reality that the profitmaking lessee would be better able to absorb the expense of the policy as a cost of doing business. (See *Government Employees Ins. Co.* v. *Carrier Ins. Co., supra,* at pp. 228-229.)

Appellant's reliance on *Transport`Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d 143, is misplaced. In *Alo,* the trailer was loaned without charge to a Boy Scout troop to gather and sell firewood as a fund raising activity. The transaction with *Alo* was not a rental. Section 11580.9, subdivision (b) did not apply as there was no business use of the equipment.

Hawkey had possession of the trailer for over seven months at the time of the accident. This long term possession of the trailer by the lessee is comparable to ownership and, as such, the lessee's insurance should be primary. (See *Transport Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d at p. 148.) This reasoning is codified in section 11580.9, subdivision (b), which provides that when the leasing of the commercial vehicle exceeds six months, the lessee's policy will be conclusively presumed to be primary. (See also *Government Employees Ins. Co.* v. *Carrier Ins. Co., supra,* 45 Cal.App.3d at p. 229.)

The trial court properly found that Hartford's policy was primary and the automobile liability policy issued by Mission was excess.

Hartford relies on section 11580.9, subdivision (d) and asserts that because the trailer was rated and described as an owned vehicle in Redwood's policy issued by Mission that the policy is primary. The statute is specific and provides that subdivision (d) applies only when subdivisions (a), (b), or (c) are inapplicable. Since subdivision (b) applies, this ends our inquiry. The fact that the trailer was rated and described in the Mission policy is irrelevant. There is no need to address Hartford's remaining contentions.

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied September 17, 1984, and appellant's petition for a hearing by the Supreme Court was denied October 24, 1984.