[No. A068051. First Dist., Div. Four. July 31, 1995.]

In re KALI D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KALI D., Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II A and II C.

## COUNSEL

Gardner & Derham and Robert Derham for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Kali D., a minor (appellant), admitted automobile burglary (Pen. Code,[1] § 459) as alleged and, after a jurisdictional hearing, the court found true allegations of forcible rape (§ 261, subd. (a)(2)), possession of a controlled substance (Health & Saf. Code § 11350), and receiving stolen property (§ 496). The court found insufficient evidence to sustain an additional three counts, including residential burglary (§ 459). Appellant was adjudged a ward of the court and committed to the California Youth Authority for a maximum period of ten years: eight years for rape; eight months for possession of cocaine base; eight months for receiving stolen property; and eight months for auto burglary.

Appellant contends that: (1) the juvenile court's failure to grant him a jury trial violated both the federal and state Constitutions; (2) the receiving stolen property finding must be set aside because appellant was apprehended in possession of property he stole; and (3) the case should be remanded because the court failed to expressly declare whether the receiving stolen property and second degree burglary counts were felonies or misdemeanors. We reverse the receiving stolen property finding and otherwise affirm.

### I. FACTS

On July 18, 1994, Vivian W., a "mildly retarded" 18-year-old girl, sat on her front porch listening to music. Appellant, age 14, approached her and asked if he could watch television in her house. Once inside, he asked her if they could go into the bedroom and have sex. Vivian said, "No, would you please leave." Appellant then pushed Vivian onto the bed, pulled her pants down, and had sexual intercourse with her. After appellant saw that Vivian was bleeding, he got up, cleaned himself off, and left the house.

Soon thereafter, appellant returned with a friend, Howard A., and asked Vivian to "do" Howard. She refused, and Howard briefly sodomized her. Both boys left when a neighbor arrived and asked them to leave.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

Vivian then dialed "911" and reported the events to the police who arrived five to ten minutes later. They drove her through the neighborhood until she identified appellant. The officers searched appellant and found four pieces of rock cocaine and four cassette tapes. The tapes belonged to Vivian and had been kept on the dresser in her bedroom. Vivian did not give anyone permission to take the tapes from her bedroom.

Appellant admitted to having intercourse with Vivian; however, he stated that it was consensual. He also admitted the cocaine was his. Appellant denied that he stole the tapes and said that he asked permission to use them.

## II. ANALYSIS

### A. *Appellant Has No State or Federal Constitutional Right to a Jury**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *The Finding on the Receiving Stolen Property Allegation Must Be Set Aside*

Appellant argues that the receiving stolen property finding must be set aside because he was the person who actually stole the audiotapes, his apprehension occurred before the statute of limitations had run on the theft offense, and a thief cannot be convicted of receiving the property which he stole. We agree with his analysis.

Although not charged or convicted of theft, appellant asserts it was undisputed that he was the actual thief. When officers apprehended and searched appellant soon after the rape, they found four cassette tapes which the victim immediately identified as hers. She did not see who took the tapes, but she stated that she did not give anyone permission to take them. Appellant admitted that he "got the tapes" from the victim's apartment, but he stated, "I didn't steal them. I asked could I use them, and I got them from the living room."[2]

In light of the above, we conclude there was ample evidence to charge and convict appellant of theft as well as charging him with receiving stolen

---

*See footnote, *ante*, page 381.

[2] The People assert that despite this evidence, there was no "direct proof" that appellant was the thief. They argue that since Howard was in the room and "could have" stolen the tapes as well, it was proper to charge appellant with receiving. However, there is no evidence that Howard was ever suspected of being the thief. The district attorney charged appellant with residential burglary (§ 459): entering "with intent to commit *theft*"); later, in arguing against dismissal of the burglary count, the district attorney asserted that appellant stole while in Vivian's home. The court also stated: "I think he committed theft after he got in [the house]. . . ."

property. The issue presented is whether it was proper to *convict* appellant of receiving stolen property before the statute of limitations had run on theft.

Before 1992 the law of California provided that absent certain recognized exceptions, a thief could not be convicted of receiving the same property which he stole. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 759 [129 Cal.Rptr. 306, 548 P.2d 706]; *People v. Tatum* (1962) 209 Cal.App.2d 179, 183-185 [25 Cal.Rptr. 832.) In 1992, however, the receiving stolen property prohibition[3] was amended to further provide: "A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property." (§ 496, subd. (a), as amended by Stats. 1992, ch. 1146, § 1.) The Attorney General urges that the plain meaning of the statute since its 1992 amendment is that a thief may now be convicted in California of possessing the very property he stole; appellant, however, contends that the thief may be convicted of receiving stolen property only when the statute of limitations has run on the petty theft.[4] No such limitation is to be found in the statute, but section 2 of the enacted bill does specify the intent of the Legislature in enacting this amendment prohibiting conviction of *both* receiving stolen property and theft of the same property: "It is the intent of the Legislature to provide for the prosecution of principals in the actual theft of the property who continue to possess that property *after the statute of limitations has run on the theft of the property*." (Stats. 1992, ch. 1146, § 2, italics added.)

Thus is presented the novel situation where the plain meaning of the statute appears clear, but is contradicted by the intent clause, which was not enacted as part of the Penal Code. The plain meaning is that a thief may be convicted of either receiving stolen property or theft. That plain meaning only becomes clouded when reference is made to the entire bill: that its purpose was to modify the common law of this state to allow a receiver of stolen property, who happens to also be the thief, to be convicted of receiving when the statute of limitations has run on the theft. This expression

---

[3]Receiving stolen property is defined in section 496, subdivision (a): "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison, or in a county jail for not more than one year. However, if the district attorney or the grand jury determines that this action would be in the interest of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed four hundred dollars ($400), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year." Here the district attorney charged the appellant with a felony.

[4]Section 802 provides that the applicable statute of limitations on petty theft is one year.

of legislative intent indicates a more limited repeal of the common law so that, as appellant contends, the actual thief can be convicted of the greater offense of receiving stolen property only when the limitations period has expired with respect to the underlying theft.

■ The objective of statutory interpretation is to ascertain and effect legislative intent, and in doing so the court generally looks first at the "plain meaning" of the words used. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154], citing *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) When statutory language is clear and unambiguous, there is no need for further analysis, nor is there a need to resort to "indicia of the intent of the Legislature." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, the " 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose" and provisions relating to the same subject matter must be construed together and "harmonized to the extent possible." (*Ibid.*)

■ Because the Legislature enacted Statutes 1992, chapter 1146, section 2 describing its purpose in amending section 496, and because *both* the actual amendment to section 496, subdivision (a), and the legislative intent section were enacted together in the same bill, and because both have equal force as law, we must harmonize them to the extent possible. We applaud and encourage the use of "intent" sections by the Legislature; such an enactment provides a clear blueprint which bench and bar can easily follow; and clearly indicating such purpose discourages courts and counsel from speculating upon "legislative intent."[5] In construing the literal meaning of section 496, subdivision (a), with the express declaration of legislative intent, it appears to us that the Legislature intended the statute to be applied only to thieves who continue to possess the stolen property after the statute of limitations has expired on theft. Such a construction accords full force and effect to the statutory amendment, the enacted bill's statement of legislative intent, and harmonizes them with existing law.

Finally, the People argue that *People* v. *Price* (1991) 1 Cal.4th 324, 464 [3 Cal.Rptr.2d 106, 821 P.2d 610] compels a contrary conclusion. In *Price* the

---

[5]Courts are often requested to take judicial notice of letters written by the author of the bill to the Governor requesting approval, analyses prepared by legislative committee staff, Legislative Counsel opinions, etc. (*Kirkorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1219 [242 Cal.Rptr. 312]; *Lyons* v. *Wickhorst* (1986) 42 Cal.3d 911, 919 [231 Cal.Rptr. 738, 727 P.2d 1019]; *International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340, 352, fn. 14 [254 Cal.Rptr. 782].) Inclusion of a section describing the actual legislative intent—a section which is voted upon by a majority of both houses and approved by the Governor—precludes taking judicial notice of improper subjects and erroneously speculating thereupon.

California Supreme Court upheld the defendant's conviction of receiving stolen property even though the prosecution's evidence strongly suggested the defendant stole the property. (*Ibid.*) *Price* is factually distinguishable.

In *People* v. *Price, supra*, 1 Cal.4th 324, five guns were stolen from the Moore residence. (*Id.* at p. 380.) Approximately one month later, the defendant arrived at his stepfather's house with a number of guns wrapped in blankets and told his stepfather that the guns might have been stolen. (*Ibid.*) Defendant then left the guns at his stepfather's house and, approximately one week later, moved them to the ministorage unit in which four of the five guns were found. (*Ibid.*) A shotgun similar to the fifth missing gun was found at the defendant's mother's house, but was unidentifiable because the stock and barrel had been sawed off. (*Ibid.*) There was no direct evidence that the defendant removed the guns from the Moore residence, only evidence of continued possession beginning one month later.

In the case at bench, however, appellant was apprehended with the cassette tapes in his physical possession. He admitted that he removed the tapes from the victim's apartment; the only issue was whether he received permission to take them. We cannot imagine a set of facts in which it is more clear that the defendant was the person who actually took the property.

### C. *No Remand Is Necessary to Determine That the Automobile Burglary Was Treated as a Felony**

. . . . . . . . . . . . . . . . . . . . . . . .

## III. CONCLUSION

The admission of automobile burglary, and the findings on the counts of forcible rape, and possession of rock cocaine are affirmed. The true finding of receiving stolen property is reversed. The maximum period of confinement is reduced from ten years to nine years four months and the clerk of the superior court is ordered to correct the abstract of judgment accordingly.

Perley, J., and Reardon, J., concurred.

*See footnote, *ante*, page 381.