[No. B087655. Second Dist., Div. Five. Jan. 24, 1996.]

TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Plaintiff and Respondent, v.
MARYLAND CASUALTY COMPANY, Defendant and Appellant.

**COUNSEL**

Burns, Ammirato, Palumbo, Milam & Baronian, Bruce Palumbo, Valerie Julien-Peto and Grace C. Mori for Defendant and Appellant.

Hawkins, Schnabel, Lindahl & Beck, Jon P. Kardassakis and R. Timothy Stone for Plaintiff and Respondent.

**OPINION**

**GRIGNON, Acting P. J.**—Defendant and appellant The Maryland Casualty Company appeals from the judgment entered against it and in favor of plaintiff and respondent The Travelers Indemnity Company of Illinois. This case involves a motor vehicle liability insurance coverage dispute arising out of a loss for which both insurers concede coverage, but claim to afford excess rather than primary insurance. Pursuant to Insurance Code[1] section 11580.9, subdivision (b), the policy covering a named insured "engaged in the business of renting or leasing motor vehicles without operators" is conclusively presumed to be excess if the motor vehicle involved is a commercial vehicle. We hold that a moving company which provides trailers to its independent contractor subhaulers is not "engaged in the business of

---

[1] Unless otherwise noted, all further statutory references are to the Insurance Code.

renting or leasing motor vehicles without operators" within the meaning of section 11580.9, subdivision (b). Accordingly, we conclude the insurance of the moving company is primary. We therefore affirm.

## PROCEDURAL BACKGROUND

On November 5, 1990, a tractor-trailer operated by Peleti Siatuu, Jr., was involved in an accident which resulted in two consolidated personal injury actions. At the time of the accident, Siatuu worked with Apace Moving Systems, Inc., pursuant to an independent contractor agreement.

Maryland had issued a policy of motor vehicle insurance to Apace; Travelers had issued a similar policy to Siatuu. Siatuu and Apace were named as defendants in the personal injury actions. Apace was named both as the owner of the motor vehicle involved in the accident and as Siatuu's principal.

On April 8, 1992, Travelers filed this action for declaratory relief, contribution and reimbursement against Maryland, seeking to hold Maryland primarily liable to defend and indemnify Siatuu in the underlying actions. Maryland filed a cross-complaint seeking similar relief with respect to the obligation to defend and indemnify Apace.

The underlying personal injury actions settled for a total of $170,000.[2] Travelers and Maryland each contributed $85,000 toward the settlement without waiving their rights to pursue the other. On March 5, 1993, Travelers moved for summary adjudication of the issue of Maryland's primary liability for the amounts paid to settle and defend the actions.[3] The trial court determined the motion as a legal question based on undisputed facts and granted Travelers's motion. After a stipulation regarding damages, judgment was entered in favor of Travelers for $97,386.15 on Travelers's complaint and against Maryland on Maryland's cross-complaint. Maryland filed a timely notice of appeal.[4]

## FACTS

The material facts are undisputed. Pursuant to the independent contractor agreement, Siatuu was to use his own tractor for moving jobs, and Apace

---

[2] This amount was well within the policy limit of either policy.

[3] Prior to the settlement of the underlying actions, both parties moved for summary judgment in the coverage dispute. At the hearing on both motions, the trial court indicated it was inclined to grant Travelers's motion but could not do so because the issue of damages had not been submitted. Both motions were denied without prejudice and the parties were advised they could move for summary adjudication of issues.

[4] Maryland originally filed a premature appeal from the order granting summary adjudication of issues. This appeal was dismissed.

was to provide a suitable trailer for his use. The agreement provided, however, that if Siatuu provided his own trailer, his commission percentage would increase by 5 percent. The trailer Siatuu pulled at the time of the accident was one of Apace's trailers. Also, Siatuu was not driving his own tractor, but instead was driving a tractor that had been leased from Westrux, International, Inc., by Apace, which passed the cost on to Siatuu. Apparently, Siatuu's tractor was being repaired. Westrux would not lease a tractor to Siatuu as an individual, so, with Apace's consent, the tractor was provided to Siatuu through a general lease agreement between Westrux and Apace.

### Maryland's Coverage of Siatuu

Maryland's policy covering Apace includes among its insureds "[a]nyone . . . using with your permission a covered 'auto' you own, hire or borrow." The Maryland policy describes the trailer involved in the accident. Additionally, Maryland's policy contains an "Additional Insured—Lessor" endorsement which provides that the policy applies to "trucks leased or hired on a short-term basis" from Westrux. This endorsement further provides that any leased vehicle so designated "will be considered a covered 'auto' you own and not a covered 'auto' you hire or borrow."

### Travelers's Coverage of Siatuu

Two tractors and two trailers were specifically described in Travelers's policy covering Siatuu; none of these vehicles was involved in the accident. However, the Travelers's policy indisputably covered Siatuu.

### DISCUSSION

### Standard of Review

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) "A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).) Summary adjudication motions are restricted to an entire cause of action, an affirmative defense, a claim for punitive damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1); *Hood* v. *Superior Court* (1995) 33 Cal.App.4th 319, 323 [39 Cal.Rptr.2d 296].) ▉ "The policy underlying motions for summary judgment and summary adjudication of issues is to '"promote and protect the administration of justice, and to expedite litigation

by the elimination of needless trials." ' " (*Hood* v. *Superior Court, supra,* 33 Cal.App.4th at p. 323.) When the motion has been submitted to the trial court on undisputed and stipulated facts, we are not bound by the trial court's construction of the insurance policies and the applicable statutes, and instead determine these issues as a matter of law. (*Transport Indemnity Co.* v. *Royal Ins. Co.* (1987) 189 Cal.App.3d 250, 253 [234 Cal.Rptr. 516]; *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 487 [149 Cal.Rptr. 472].)

*Legislative Interpretation*

■    Our primary duty when interpreting a statute is to determine and effectuate the Legislature's intent. (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1382 [46 Cal.Rptr.2d 542]; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].) "When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written." (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co., supra,* 39 Cal.App.4th at p. 1382.) " 'Words used in a statute . . . should be given the meaning they bear in ordinary use.' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 . . . .)" (*People* v. *Ramirez, supra,* 33 Cal.App.4th at p. 563.) "However, the ' "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose . . .' and provisions relating to the same subject matter must be construed together and 'harmonized to the extent possible.' " (*In re Kali D.* (1995) 37 Cal.App.4th 381, 386 [43 Cal.Rptr.2d 581].) "An interpretation that renders related provisions nugatory must be avoided." (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.)

*Section 11580.9*

"Prior to 1970, the allocation of loss between coinsurers, two or more insurers affording coverage to the same loss, was made by judicial resort to the provisions of the respective policies. Often the policies contained provisions (so-called 'other insurance' clauses) through which one coinsurer would attempt to avoid or minimize the amount of its liability at the expense of other coinsurers. . . . Judicial construction of these provisions was marked by inconsistency, prompting commentators and the courts alike to request legislative clarification." (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* 85 Cal.App.3d at p. 485.)

The Legislature responded by enacting section 11580.9, which sets forth four conclusive presumptions regarding primary and excess coverage in motor vehicle liability coinsurance disputes. (*Zurich-American Ins. Co.* v.

*Liberty Mut. Ins. Co.*, *supra*, 85 Cal.App.3d at p. 485.) The Legislative intent is set forth in section 11580.8: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 . . . expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply . . . ." The presumptions of section 11580.9 are conclusive. (*Transport Indemnity Co.* v. *Royal Ins. Co.*, *supra*, 189 Cal.App.3d at p. 253; *Mission Ins. Co.* v. *Hartford Accident & Indemnity Co.* (1984) 160 Cal.App.3d 97, 101 [206 Cal.Rptr. 383].)[5]

Two subdivisions of section 11580.9 are at issue in this case, subdivisions (b) and (d).

Section 11580.9, subdivision (b) establishes a conclusive presumption that the policy covering an insured engaged in the business of renting or leasing commercial vehicles is excess to any other insurance covering the loss. Section 11580.9, subdivision (b) provides: "Where two or more policies apply to the same loss, and one policy affords coverage to a named insured engaged in the business of renting or leasing motor vehicles without operators, it shall be conclusively presumed that the insurance afforded by that policy to a person other than the named insured or his or her agent or employee, shall be excess over and not concurrent with, any other valid and collectible insurance applicable to the same loss covering the person as a named insured or as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code. The presumption provided by this subdivision shall apply only if, at the time of the loss, the involved motor vehicle either: [¶] (1) Qualifies as a 'commercial vehicle' as that term is used in Section 260 of the Vehicle Code[; or [¶] (2) h]as been leased for a term of six months or longer."

Section 11580.9, subdivision (d) establishes a conclusive presumption that, where none of the other three statutory presumptions applies, the policy

---

[5]*Mission Ins. Co.* v. *Hartford Accident & Indemnity. Co.*, *supra*, 160 Cal.App.3d 97 is to be distinguished from *Mission Ins. Co.* v. *Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199 [202 Cal.Rptr. 635], discussed later in this opinion. Although the named parties in the two *Mission* cases are similar, the two opinions are not consecutive opinions in the same case.

in which the motor vehicle is described as an owned automobile is primary. Section 11580.9, subdivision (d) provides: "Except as provided in [section 11580.9,] subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

■ Maryland contends Apace was "engaged in the business of renting or leasing motor vehicles without operators," and that therefore section 11580.9, subdivision (b) applies, rendering its insurance excess. Travelers contends Apace was not so engaged, and that therefore section 11580.9, subdivision (d) applies, rendering Maryland's insurance primary.

*Application of Section 11580.9, Subdivision (b)*

The language of section 11580.9, subdivision (b) is clear and unambiguous. In order for an insurer to receive the benefit of section 11580.9, subdivision (b)'s conclusive presumption, its insured must be "engaged in the business of renting or leasing motor vehicles without operators" *and* the involved motor vehicle must be either a commercial vehicle or one leased for at least six months. Both elements must be present in order for section 11580.9, subdivision (b) to apply.[6]

It is undisputed that both the tractor and the trailer provided to Siatuu by Apace were "commercial" vehicles within the meaning of section 11580.9, subdivision (b). The only disputed issue is whether Apace was "engaged in the business of renting or leasing motor vehicles without operators."

---

[6]In 1983, section 11580.9, subdivision (b) was amended to read substantially as it does now. Prior to the amendment, the subdivision read, in pertinent part, "Where two or more policies are applicable to the same loss, and one of such policies affords coverage to a named insured *engaged in the business of renting or leasing commercial vehicles without operators* . . . or the leasing of any other motor vehicle for six months or longer, it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss . . . ." (Italics added.) Courts interpreting this language disagreed on whether the nature of the insured's business or the status of the involved motor vehicle governed application of the subdivision. (Compare *McCall* v. *Great American Ins. Co.* (1981) 119 Cal.App.3d 993, 997 [174 Cal.Rptr. 399] [holding the nature of the insured's business determinative] with *Western Carriers Ins. Exchange* v. *Pacific Ins. Co.* (1989) 211 Cal.App.3d 112, 116-118 [259 Cal.Rptr. 36] and *Mission Ins. Co.* v. *Hartford Accident & Indemnity Co., supra,* 160 Cal.App.3d at pp. 101-102 [holding the commercial nature of the lessee's use of the vehicle determinative].)

*Engaged in the Business of Renting or Leasing Motor Vehicles Without Operators*

In determining whether an insured is engaged in the business of renting or leasing motor vehicles without operators, we again consider the plain language of the statute. In order for an insured to be "engaged in the business of renting or leasing motor vehicles," renting or leasing activities must be a regular part of the insured's business. "The authorities have not established a bright line rule to determine whether an insured is engaged in [the business of] leasing or renting" motor vehicles. *(Western Carriers Ins. Exchange* v. *Pacific Ins. Co., supra,* 211 Cal.App.3d at p. 116.) However, limits on the scope of the phrase "engaged in the business" can be identified. Neither a single lease of a motor vehicle, nor the occasional leasing of motor vehicles incidental to a different business is sufficient. (See *Transport Indemnity Co.* v. *Alo* (1981) 118 Cal.App.3d 143, 149 [172 Cal.Rptr. 394] ["The emphasis . . . on [the insured's] occasional rental of commercial vehicles is not justified. [The insured's] overall business operations cannot be used to invoke subdivision (b) and produce a result not intended by the statute."]; *Powell* v. *Premier Ins. Co.* (1981) 118 Cal.App.3d 336, 343 [173 Cal.Rptr. 383] [To conclude an insured is "engaged in the business of selling . . . automobiles" within the meaning of former section 11580.1, subdivision (d)(2), "the business activity of the insured must have been one of those enumerated in the statute and . . . something more is required than that the insured engages in selling automobiles incident to a principal business not enumerated in the statute."].) Were this not the case, section 11580.9, subdivision (b) would apply to *any* rental of a commercial vehicle, and the "engaged in the business of renting or leasing motor vehicles without operators" language of the subdivision would be rendered nugatory.[7]

*Apace's Business*

The only facts relied on by Maryland to prove Apace was engaged in the business of renting or leasing motor vehicles without operators are those arising from its relationship with its independent contractors. Apace is

---

[7]To the extent *Western Carriers Ins. Exchange* v. *Pacific Ins. Co., supra,* 211 Cal.App.3d at pages 116-118 and *Mission Ins. Co.* v. *Hartford Accident & Indemnity Co., supra,* 160 Cal.App.3d at page 101, in interpreting section 11580.9, former subdivision (b), conclude that a single or incidental lease of a commercial vehicle is sufficient to establish an insured is "engaged in the business of renting or leasing motor vehicles," we disagree. Section 11580.9, subdivision (b), as amended, requires a two-part analysis. Whether the leased vehicle is commercial or subject to a six-month lease focuses on the vehicle itself, but whether the insured is engaged in the business of renting or leasing focuses on the nature of the insured's business.

engaged in the moving and storage business.[8] However, the majority of its moving and storage business is conducted by independent contractor subhaulers, and the majority of those independent contractor subhaulers are provided trailers by Apace under an agreement by which their commission percentages are increased if they provide their own trailers. In 1990, Apace engaged six to eight independent contractors, all but one of whom used Apace's trailers.

Assuming without deciding that the arrangement whereby Apace provided trailers to its independent contractor subhaulers can be characterized as a lease, we conclude that such leasing activity was merely incidental to Apace's primary business of moving and storage, such that Apace was not "engaged in the business of renting or leasing motor vehicles without operators" as a matter of law. Apace did not rent or lease trailers to the general public. Indeed, the only individuals who could lease trailers from Apace for use on the highway were independent contractor subhaulers with whom Apace had entered into independent contractor agreements. Although Apace may have made a slight profit on the lease of these trailers, such leases were wholly incidental to its business of moving and storage. If Apace had no moving and storage business for a subhauler, no trailer would be leased. The concurrent leasing of a trailer in order to enable an independent contractor to conduct subhauling work for Apace cannot turn Apace's moving and storage business into a commercial vehicle rental operation.[9] Therefore, section 11580.9, subdivision (b) does not apply.

*Application of Section 11580.9, Subdivision (d)*

When section 11580.9, subdivision (b) does not apply, the general rule of section 11580.9, subdivision (d) governs. (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* 85 Cal.App.3d at p. 486.) Thus, "it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." (§ 11580.9, subd. (d).)

The Maryland policy insuring Apace describes the trailer pulled by Siatuu at the time of the accident as an owned automobile. Additionally, through

---

[8] Maryland's policy to Apace describes Apace's business as "moving and storage."

[9] Maryland contends that the nature of Apace's business should be determined as a matter of law on the undisputed facts, thus making any witness's characterization of the business irrelevant. We agree. However, our conclusion regarding the nature of Apace's business is in accord with the deposition testimony of Apace's vice-president of administration ("Q: Apace is not involved in the business of renting or leasing motor vehicles without operators to others, is it? A: No.").

the "Additional Insured" endorsement relating to Westrux, the tractor leased from Westrux is described as "a covered 'auto' [Apace] own[s] and not a covered 'auto' [Apace] hire[s] or borrow[s]." Therefore, both parts of the tractor-trailer are described as owned in Maryland's policy.

In contrast, neither the trailer nor the tractor is described as owned in Travelers's policy. Maryland contends, however, that because Siatuu was driving a temporary replacement tractor for a tractor that *was* described as owned in his policy, coverage for the temporary vehicle should be on the same basis (i.e., "owned vehicle coverage") as coverage for the vehicle it replaced.

We disagree. The "Temporary Substitute Autos" provision of Travelers's policy provides only that substitute vehicles will be considered "covered" autos, not that they will be considered "owned." (Cf. *Grand Rent A Car Corp.* v. *20th Century Ins. Co.* (1994) 25 Cal.App.4th 1242, 1247, 1253 [31 Cal.Rptr.2d 88] [rental cars that were "additional insured vehicles" under renters' policies were concededly not "described as owned" in those policies].)[10]

*Other Equitable and Statutory Contentions*

Maryland raises both equitable and statutory arguments to avoid the application of section 11580.9, subdivision (d) to this case. None is persuasive. Maryland's equitable arguments are easily addressed. Section 11580.8 provides that section 11580.9 constitutes the total public policy of the state with respect to coinsurance disputes. Therefore, specific factual arguments sounding in equity are subordinate to the conclusive presumptions of section 11580.9.[11] Maryland's reliance on the "other insurance" clauses in

---

[10]Moreover, even if the tractor driven by Siatuu were somehow described as owned in Travelers's policy, the result would be the same. "[A]n accident which involves a truck tractor/trailer rig should be viewed as arising out of the use of all components of the rig." (*Transport Indemnity Co.* v. *Royal Ins. Co., supra,* 189 Cal.App.3d 250, 255.) In applying section 11580.9, subdivision (d) to a coinsurance situation arising out of such an accident, a policy which describes both components of the rig as owned vehicles is considered primary when compared to a policy which describes only one component of the rig. (189 Cal.App.3d at pp. 255-256.) Therefore, since Maryland's policy describes both the tractor and trailer as owned vehicles, its policy would remain primary.

[11]We note, however, that if equitable arguments did apply, those arguments would not favor Maryland. "[Section 11580.9, s]ubdivision (b) was designed to apply in a business setting where a commercial vehicle is leased to a profit-making entity." (*Transport Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d at p. 148.) Siatuu used the rented tractor and trailer only on Apace business. He did not independently make a profit in his own hauling business, but

the insurance policies at issue is similarly misplaced. Because we have resolved this case under section 11580.9, subdivision (d), we simply do not reach the effect of the "other insurance" clauses. (*Grand Rent A Car* v. *20th Century Ins. Co.*, *supra*, 25 Cal.App.4th at p. 1254, fn. 9.)

Alternatively, Maryland argues that Siatuu's agreement, as part of the independent contractor agreement, to hold Apace harmless and to name it as an additional insured in his policy[12] constitutes an exception to the application of section 11580.9, subdivision (d) within the terms of section 11580.9, subdivision (f). Section 11580.9, subdivision (f) provides: "The presumptions stated in [Section 11580.9,] subdivisions (a) to (d), inclusive, may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in these subdivisions and all named insureds under these policies." Maryland argues that the "hold harmless" clause in the independent contractor agreement, combined with the "other insurance" clauses of the insurance policies, constitutes a written agreement that Siatuu's insurer would be primarily liable for the loss. An identical contention was rejected by *Mission Ins. Co.* v. *Hartford Ins. Co.*, *supra*, 155 Cal.App.3d 1199. "Neither [insurance company] entered into an agreement modifying or changing the presumption created by . . . section 11580.9, subdivision (d). The subhaul agreement is inadequate to change or modify this conclusive presumption because it was not signed by the insurers and by all of the insureds named in the policies." (*Id.* at p. 1216.) Noncompliance with the requirements of section 11580.9, subdivision (f) precludes the independent contractor agreement from constituting a valid modification to the requirements of section 11580.9, subdivision (d).[13]

*Maryland's Cross-complaint*

Maryland argues that the trial court erred in entering judgment against it on its cross-complaint for indemnity with respect to the moneys paid on behalf of its insured, Apace. Because we have concluded section 11580.9, subdivision (d) applies to this case, the fact that the vehicles involved were described as owned in Maryland's policy renders Maryland primarily liable with respect to moneys paid on behalf of Apace.

instead subhauled for Apace. Under those circumstances, the entity in the best position to pass the cost of insurance on to its customers is Apace, which provided Siatuu with customers as well as the vehicle.

[12]Siatuu did not comply with this contract provision.

[13]Further, it should be noted that both the Maryland policy and the Travelers policy excluded coverage for liability assumed under any contract.

## DISPOSITION

The judgment is affirmed. Maryland is to pay Travelers's costs on appeal.

Armstrong, J., and Godoy Perez, J., concurred.