[Civ. No. 46480. First Dist., Div. Two. Mar. 16, 1981.]

TRANSPORT INDEMNITY COMPANY et al., Plaintiffs and Respondents, v.
ROBERT ALO et al., Defendants and Appellants.

**COUNSEL**

Bronson, Bronson & McKinnon and David W. Gordon for Defendants and Appellants.

Toff, Toff, Newton & Toff and Ronald I. Toff for Plaintiffs and Respondents.

---

**OPINION**

**TAYLOR, P. J.**—This is an appeal by Robert Alo (Alo), San Francisco Bay Area Council Boy Scouts of America (Scouts) and the Scouts' insurer, New Hampshire Insurance Company (New Hampshire), from a judgment declaring that as to property damage caused by Alo, the permissive user of a truck loaned to the Scouts by Sheedy Drayage Company (Sheedy), the coverage afforded by the New Hampshire policy was primary, and that afforded to Sheedy by Transport Indemnity Company (Transport), was excess. ■ The questions on appeal are whether the applicable provision of Insurance Code section 11580.9 is subdivision (b), as the court below concluded, or subdivision (d), as New Hampshire argues; and in the alternative, whether the loss should be prorated between the two insurers. For the reasons set forth below, we have concluded that subdivision (d) applies.

The appeal is on a settled statement which sets forth the stipulated facts as follows:

On March 30, 1973, Sheedy, the owner of a flatbed truck, permitted Alo, a scoutmaster associated with the Scouts' Troop 379, to drive its truck to gather firewood in the Oakland Regional Park District. The Scouts planned to sell the firewood for profit as a fund-raising activity. As the result of a mechanical difficulty, Alo lost control of the loaded truck and hit a dwelling at 4091 Lincoln Avenue. There were no personal injuries but considerable property damage. Transport paid $20,062.27 to settle all of the property damage claims, and subsequently filed the instant action for declaratory relief. Sheedy was engaged in the business of renting commercial vehicles without drivers, although the rental operations were not a major part of its business. The transaction with Alo was not a rental; there was no monetary remuneration to Sheedy.

Sheedy was licensed by the State Public Utilities Commission (PUC). Accordingly, the PUC indorsement attached to Transport's comprehensive general auto policy increased the basic property damage

limits from $10,000[1] to $50,000 per occurrence. New Hampshire listed the Scouts as named insured under a comprehensive auto policy with limits of $1 million, including property damage. Thus, the truck loaned by Sheedy to the Scouts was an "owned automobile" covered by the Transport policy, and a "nonowned" automobile covered by the New Hampshire policy. Both insurers admitted coverage and liability.

As indicated above, the trial court concluded that pursuant to Insurance Code section 11580.9, subdivision (b), the coverage afforded by New Hampshire was primary and that afforded by Transport excess. The court reasoned that since Sheedy was in the business of renting vehicles, subdivision (b) was applicable.[2] The court attached no significance to the following: 1) the rental operations were only an occasional part of Sheedy's business; and 2) there was no rental or monetary remuneration involved in the transaction with Alo.

The pertinent provisions of Insurance Code section 11580.9 are set forth below.[3]

---

[1]The PUC indorsement contained an indemnity clause requiring the insured to reimburse Transport for amounts paid in excess of the basic $10,000 limit. Such an indemnity clause is valid and can be asserted against a permissive user (*Pacific Indem. Co. v. Transport Indemn. Co.* (1978) 81 Cal.App.3d 649, 658-659 [146 Cal.Rptr. 648]).

[2]Although the Transport policy was issued before the effective date of Insurance Code section 11580.9, the policy was continued through the date of the accident. Accordingly, the statute applies to the Transport policy (*Argonaut Ins. Co. v. Colonial Ins. Co.* (1977) 70 Cal.App.3d 608, 618-620 [138 Cal.Rptr. 855]). The statute was added by Statutes of 1970, chapter 300, section 7, page 576. Statutes of 1970, chapter 300, section 8 provided that the statute would apply only to policies issued or renewed after its effective date (Nov. 23, 1970).

[3]"(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed:

"(1) If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary, and the insurance afforded by any other policy shall be excess.

"(2) If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph (1), the insurance afforded by the policy issued to any person engaged in any of such businesses shall be excess over all other insurance available to such operator as a named insured or otherwise.

"(b) Where *two or more policies are applicable to the same loss*, and *one* of such policies *affords coverage to a named insured engaged in the business of renting or leasing commercial vehicles without operators*, as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or the leasing of any other motor vehicle for

As the facts were stipulated, the questions before us are matters of law to be determined on the basis of the two policies here involved and the applicable statutes. Accordingly, we may independently interpret the applicable policy provisions (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Furtado* v. *Metropolitan Life Ins. Co.* (1976) 60 Cal.App.3d 17 [131 Cal.Rptr. 250]; *Pacific Export Packers* v. *Chubb Pacific Indem. Group* (1976) 57 Cal.App.3d 186 [129 Cal.Rptr. 86]; *Becker* v. *State Farm Mut. Auto. Ins. Co.* (1975) 52 Cal.App.3d 282, 284 [124 Cal.Rptr. 739]).

Insurance Code section 11580.9, quoted above, was enacted to reduce the volume of cases in this area (Ins. Code, § 11580.8;[4] *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521, 524 [149 Cal.Rptr. 562]). Subdivision (d) of the statute is controlling except where subdivisions (a) through (c) apply (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 486 [149 Cal.Rptr. 472]).

---

six months or longer, *it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured* or his agent or employee *shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss covering such person as a named insured* or as an additional insured under a policy with *limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code*; and, in such event, the *two or more policies shall not be construed as providing concurrent coverage,* and only *that policy which covers the liability of such person as a named insured,* or as an agent or employee of a named insured, *shall be primary and the other policy or policies shall be excess....*

"(d) Except as provided in subdivisions (a), (b), and (c), where *two* or more *policies affording valid and collectible liability insurance apply to the same motor vehicle* in an occurrence out of which a liability loss shall arise, it shall be *conclusively presumed that the insurance afforded by that policy* in which such motor vehicle is described or rated as an *owned automobile shall be primary* and the insurance afforded by any other policy or policies shall be excess" (italics added).

[4]Insurance Code section 11580.8 provides: "The Legislature declares it to be *the public policy of this state to avoid* so far as possible *conflicts and litigation,* with resulting court congestion, *between and among* injured parties, insureds, and *insurers* concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle.

"The Legislature further declares it to be the public policy of this state that Section *11580.9* of the Insurance Code *expresses the total public policy of this state respecting the order in which* two or more of such liability insurance policies covering *the same loss shall apply,* and such public policy is not to be changed or modified by any provision of the Vehicle Code except in those express cases where the requirements of

Subdivision (b) of section 11580.9 was based on *Pacific Indemn. Co. v. Liberty Mut. Ins. Co.* (1969) 269 Cal.App.2d 793 [75 Cal.Rptr. 559], which held that the policy issued to a long-term lessee would be primary because his use of the leased vehicle was identical to that of an owner (see Melnick, Cal. Automobile Insurance Law Guide (Cont. Ed.Bar 1973) § 11.14, p. 161). The purpose of subdivision (b) is to insure that coverage follows the realities of the particular transaction in question. For example, if a passenger vehicle is leased or rented for less than six months, the economic benefit and the risk of ownership remains with the owner/lessor and his policy is primary; if the passenger vehicle is leased for a term exceeding six months, the ownership risk shifts to the lessee and the insurance policy issued to the owner/lessor becomes excess (*Melnick, supra,* § 11.16, p. 163).

As to leased or rented commercial vehicles, the emphasis is on the *business use* of the equipment. A commercial vehicle leased without an operator is most likely to be used in a business operation. As such a commercial lessee usually will be making a profit from the use, his policy should be primary. "It is not until the hirer relinquishes control of the automobile for longer than six months, or until the person operating the vehicle is *himself* making a profit thereby, *that the owners' insurance is no longer primary.*" (*Government Employees Ins. Co. v. Carrier Ins. Co.* (1975) 45 Cal.App.3d 223, 229 [119 Cal.Rptr. 116]; italics partially added). Thus, subdivision (b) was designed to apply in a business setting where a commercial vehicle is leased to a profit-making entity. Here, admittedly, there is no rental or lease and no commercial operation. The truck owned by Sheedy was loaned without consideration to a charitable organization.

New Hampshire argues that since the Scouts were making a profit from the sale of the logs, the situation is analogous to a vehicle "loaned" to an owner while his own vehicle is being repaired by a person in the business of repairing vehicles. (Cf. *Tilley v. Truck Ins. Exchange* (1978) 84 Cal.App.3d 263 [148 Cal.Rptr. 520]; *Truck Ins. Exchange v. Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553 [87 Cal.Rptr. 604]).

We cannot agree with the trial court's reasoning that the absence of a commercial situation or rental is insignificant in determining the rel-

Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code *apply with regard to a policy of liability insurance certified as provided in Section* 16431 of the Vehicle Code" (italics added).

evance of subdivision (b). In our opinion, the loan transaction that gave rise to the loss in the instant case precludes the applicability of that subdivision. The emphasis below on Sheedy's occasional rental of commercial vehicles is not justified. Sheedy's overall business operations cannot be used to invoke subdivision (b) and produce a result not intended by the statute (cf. *Zurich-American Ins. Co. v. Liberty Mut. Ins. Co., supra*, 85 Cal.App.3d 481, 488).

Here, the proper rule is the general one of subdivision (d). Subdivision (d), quoted above at footnote 3, page 146, provides that if none of the other subdivisions applies, the policy which describes or rates the "owned" vehicle will be primary and any other insurance excess. Sheedy's ownership of the truck and the coverage of the Transport policy were stipulated. As explained above at footnote 1 at page 146, Transport's primary liability is limited to $10,000 as a result of the PUC indorsement. The New Hampshire policy is excess as to the balance.

The judgment is reversed.

Rouse, J., and Smith, J., concurred.