[No. F009637. Fifth Dist. May 31, 1989.]

WESTERN CARRIERS INSURANCE EXCHANGE, Plaintiff and Appellant, v.
PACIFIC INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Ibold & Anderson and Bonnie Kay McNeil for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth and James P. Wagoner for Defendant and Respondent.

OPINION

**STONE (W. A.), Acting P. J.**—This appeal is from a declaratory relief action between appellant, Western Carriers Insurance Exchange (Western), and respondent, Pacific Insurance Company (Pacific), regarding the respective obligations of the parties arising out of an accident for which policies of both insurers provide coverage. The issues on appeal concern the interpreta-

tion of Insurance Code[1] section 11580.9, which applies in such circumstances in order to determine which coverage is primary and which coverage is excess.

## STATEMENT OF THE CASE

Western commenced the action for declaratory relief. The trial proceeded on a stipulated set of facts supplemented by additional evidence. In its statement of decision the trial court declared Western's policy to be primary for the loss and Pacific's policy to be excess. The court entered judgment in favor of Pacific.

## STATEMENT OF FACTS

A Kenworth tractor driven by Frank Cisneros collided with a pickup truck driven by Ronald C. Pietrowski. Pietrowski sustained injuries and filed suit. The tractor driven by Cisneros was owned by Robert Arthur Cook, who owned and operated Cook's Trucking Company. Cook employed Cisneros. In addition, Cook was the transportation foreman for Pacific Farms Company (Pacific Farms). As transportation foreman, Cook supervised all of the transportation operations of Pacific Farms. At the time of the accident the tractor driven by Cisneros was pulling two trailers, commonly known as a set of "doubles," which were owned by Pacific Farms. Cook had entered into an agreement with Pacific Farms whereby Cook used Pacific Farms's trailers during the cotton season, in exchange for which Pacific Farms used a set of Cook's trailers during the melon season. Had Cook not been able to use Pacific Farms's trailers, he would have had to rent the equipment for approximately $1,000 per month for a three-month season.

At the time of the accident, Western provided liability coverage for Cook's Kenworth tractor. Western's policy also covered the trailers being pulled by the tractor as unidentified, nonowned trailers. Pacific provided liability coverage for the trailers under a policy issued to Pacific Farms. The trailers were listed as scheduled vehicles in the policy. Pacific's policy did not provide coverage for Cook, Cisneros or the Kenworth tractor. Both policies provided identical coverage limits of $250,000/500,000.

## DISCUSSION

In an effort to reduce the number of disputes regarding which automobile liability insurance policy is the primary policy and which is the excess

---

[1] All statutory references are to the Insurance Code.

policy where two policies provide coverage, the Legislature enacted sections 11580.8 and 11580.9. (*Mission Ins. Co.* v. *Hartford Accident & Indemnity Co.* (1984) 160 Cal.App.3d 97, 101 [206 Cal.Rptr. 383].) Of particular relevance to the facts before us is section 11580.9, subdivision (b), which provided at the time of the accident as follows: "(b) Where two or more policies are applicable to the same loss, and one of such policies affords coverage to a named insured *engaged in the business of renting or leasing commercial vehicles without operators,* as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or the leasing of any other motor vehicle for six months or longer, it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall be primary and the other policy or policies shall be excess." (Stats. 1974, ch. 1409, p. 3094, § 5, italics added.)

■ Western contends that the conclusive presumption of section 11580.9, subdivision (b), does not apply because under no reasonable interpretation of the facts could the trial court have properly found that Pacific Farms was "engaged in the business of renting or leasing commercial vehicles without operators" within the meaning of the statute. According to Western, the court incorrectly focused upon the commercial nature and purpose of the arrangement whereby Cook used Pacific Farms's trailers, without first finding that Pacific Farms was engaged in the business of renting or leasing such vehicles. Western contends the evidence does not support a finding that Pacific Farms had leased the trailers, but only that they had been borrowed by Cook during the cotton season. Western points to the fact that there was no written lease agreement and that the only time anyone other than Pacific Farms used its trailers was when Cook used them.

Although the trial court did not expressly find that Pacific Farms was engaged in the business of leasing or renting its trailers, such a finding is implicit in the conclusion that section 11580.9, subdivision (b), applies in these circumstances. The issue is whether there is sufficient evidence to support this finding.

The authorities have not established a bright line rule to determine whether an insured is engaged in leasing or renting commercial vehicles. However, a framework for analysis of the question has been partially provided by *Mission Ins. Co. v. Hartford Accident & Indemnity Co., supra,* 160 Cal.App.3d 97, and *Transport Indemnity Co. v. Alo* (1981) 118 Cal.App.3d 143 [172 Cal.Rptr. 394]. The trial court relied upon both cases.

In *Mission,* a tractor-trailer rig collided with a motorcycle. Two automobile liability insurance policies provided coverage for the same trailer. Mission's insured, Redwood, leased the trailers to another trucking firm, Hawkey, pursuant to a written agreement. Hawkey's coverage was provided by Hartford. Redwood had previously leased the trailers to Hawkey and other companies as an accommodation so that they would in turn lease their trailers to Redwood when needed. The trailers were leased, at most, five times a year; Redwood made no profit on the leases; the lease payments were sufficient only to cover the wear and tear on the trailers. Hartford argued that Redwood was engaged in leasing trailers only in a "casual" way and was not engaged in the business within the meaning of section 11580.9, subdivision (b). The court rejected Hartford's argument: "The fact that the leasing arrangements were only a small part of Redwood's business is not determinative. *If it can be reasonably stated that the transaction involved was a commercial transaction, then section 11580.9, subdivision (b) will apply.* (See *Transport Indemnity Co. v. Alo, supra,* 118 Cal.App.3d at pp. 148-149.) Even if Redwood does not make a profit on the leasing of its trailers, that is irrelevant. We look to the actual use of the trailers by Hawkey. (*Government Employees Ins. Co. v. Carrier Ins. Co.* (1975) 45 Cal.App.3d 223, 228 [119 Cal.Rptr. 116].) Hawkey intended and did use the trailers for financial gain, i.e., to fulfill a subhaul agreement to transport woodchips. Hawkey's decision to lease the trailers from Redwood was based on a profit motive. It therefore cannot be denied that, at least from Hawkey's perspective, the leasing of the trailers was a commercial transaction. Furthermore, Redwood's decision to lease the trailers to another trucking firm, albeit only at the cost of maintenance, was also a commercial decision in every sense of the word. This accommodation was insurance in the event Redwood was caught short and would need to lease trailers from other firms. Redwood's motive was not charitable, but was designed to ensure profitability. (See *Transport Indemnity Co. v. Alo, supra,* at p. 148.) The purpose in shifting the risk of damage from the owner's policy to the commercial lessee's policy recognizes the commercial reality that the profitmaking lessee would be better able to absorb the expense of the policy as a cost of doing business. (See *Government Employees Ins. Co. v. Carrier Ins. Co., supra,* at pp. 228-229.)" (*Mission Ins. Co. v. Hartford Accident & Indemnity Co., supra,* 160 Cal.App.3d at pp. 101-102, italics added.)

The trucking companies in *Mission* entered into a written lease or rental agreement and Redwood paid Hawkey for the use of the trailers. In the case before us, on the other hand, no written lease agreement existed between Cook and Pacific Farms and no money changed hands. The trial court found that Cook was a permissive user and that there was a "bargained exchange" for the use of the trailers based upon the fact that Pacific Farms used Cook's trailers during the melon season. Neither party challenges these findings on appeal. The question is whether this bargained exchange can be construed as a lease or rental.

The second of the two cases relied upon by the trial court, *Transport Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d 143, provides some guidance. The owner of a flatbed truck loaned the truck to the Boy Scouts to be used to haul firewood to raise money for the organization. The owner of the truck was in the business of renting commercial vehicles without drivers, although the rental operations were not a major part of the business. The insurance company which provided coverage for the owner of the truck contended that the conclusive presumption of section 11580.9, subdivision (b) applied since its insured was in the business of leasing or renting commercial vehicles without drivers. The court rejected this argument, concluding that the section could not be invoked to produce a result not intended by the statute. (118 Cal.App.3d at p. 149.)

"The purpose of subdivision (b) is to insure that coverage follows the realities of the particular transaction in question. For example, if a passenger vehicle is leased or rented for less than six months, the economic benefit and the risk of ownership remains with the owner/lessor and his policy is primary; if the passenger vehicle is leased for a term exceeding six months, the ownership risk shifts to the lessee and the insurance policy issued to the owner/lessor becomes excess [citation].

"As to leased or rented commercial vehicles, the emphasis is on the *business use* of the equipment. A commercial vehicle leased without an operator is most likely to be used in a business operation. As such a commercial lessee usually will be making a profit from the use, his policy should be primary. 'It is not until the hirer relinquishes control of the automobile for longer than six months, or until the person operating the vehicle is *himself* making a profit thereby, *that the owners' insurance is no longer primary.*' [Citation.] Thus, subdivision (b) was designed to apply in a business setting where a commercial vehicle is leased to a profit-making entity. Here, admittedly, there is no rental or lease and no commercial operation. The truck owned by Sheedy was loaned *without consideration* to a charitable

organization." (*Transport Indemnity Co.* v. *Alo, supra,* 118 Cal.App.3d at p. 148, fourth italics added.)

Cook's use of the trailers during the cotton season was unquestionably commercial. The trailers were loaned for a valuable consideration since Pacific Farms had reciprocal use of Cook's trailers during the melon season. The fact that there was no written lease or rental agreement and that no regular payments were made for the use of the trailers does not necessarily remove the transaction from the coverage of section 11580.9, subdivision (b). The commercial realities of the situation are sufficient to support the trial court's invocation of the conclusive presumption of subdivision (b) of section 11580.9.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Baxter, J., and Pettitt, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 16, 1989.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.