Filed 6/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TURO INC.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>THE PEOPLE ex rel. DENNIS J. HERRERA, as City Attorney, etc., et al.,<br><br>    Real Parties in Interest. | A160200<br><br>(San Francisco County<br>Super. Ct. No. CGC-18-563803) |

Turo Inc. operates an online platform that allows car owners to rent their cars to other Turo users. Unlike companies such as Enterprise or Hertz, Turo does not own, lease, or rent a fleet of cars for customers to rent. The People, acting by and through the City Attorney of San Francisco, sued Turo alleging that Turo engaged in unlawful and unfair business practices by operating a rental car business at San Francisco International Airport (SFO) without a valid permit. Turo cross-complained against the City and County of San Francisco (the City), which owns and operates SFO, seeking a declaratory judgment that it is not a rental car company under California law. The issue before us here is whether Turo is "in the business of renting

1

vehicles to the public." If it is, then the parties agree that Turo is a "rental car company" for the purposes of Government Code section 50474.1, and accordingly SFO is authorized to require Turo to collect a fee from its customers on behalf of the airport.

The trial court granted summary adjudication to the People and the City on Turo's first cause of action for declaratory relief that it is not a rental car company under California law, and Turo now challenges that ruling. Because we conclude that Turo is not a rental car company as that term is defined in California statutes, we grant Turo's petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Turo is an Internet-based platform that allows vehicle owners to list, and customers to rent, specific passenger vehicles. Turo processes reservations and payments for the rentals, and retains a percentage of the proceeds of each rental transaction. Turo's terms of service contract governs the rentals with respect to cancellations, extensions and late returns, late fees, smoking, pets, fuel, tolls, security deposits, street parking, and nondiscrimination. Turo provides a liability insurance policy through a third-party insurer that covers vehicles during a rental and offers "vehicle protection options" to "cover" the entitlement of owners and liability of renters if a vehicle is damaged during a rental. Turo competes with traditional on-airport and off-airport rental car companies, and has used phrases like "rent" and "rental car" in its advertisements. Turo lists cars for rental to be picked up at SFO, and some of Turo's customers pick up cars at SFO, including at curbside. The average cost of a Turo transaction at SFO is similar to that of a traditional car rental at SFO.

The People sued Turo alleging that Turo violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) by operating a rental

2

car business at SFO without the required permit, engaging in prohibited curbside transactions at SFO, and using airport roadways and offering services on airport property without permission. The People further alleged that Turo's actions constituted unfair business practices, inasmuch as failure to comply with SFO's permit and fee requirements resulted in Turo's ability to advertise and charge lower prices than competitor rental car companies.

Turo cross-complained against the City, seeking a declaratory judgment that it is not a rental car company under California law.[1] Turo alleged that SFO had unlawfully demanded that Turo obtain an off-airport rental car company permit, and pay fees that SFO is authorized to charge only "rental car companies" under Government Code section 50474.1, subdivision (a).[2]

The People and the City (collectively, Real Parties) moved for summary adjudication on Turo's cross-claim for declaratory relief. The trial court concluded that Turo is a rental car company within the meaning of Government Code section 50474.1, subdivision (a), and granted the Real Parties' motion.

This petition for writ of mandate followed.[3]

---

[1] Turo alleged six causes of action in its operative Corrected First Amended Cross-Complaint, but only its first cause of action for declaratory relief is at issue in this appeal.

[2] Government Code section 50474.1, subdivision (a) states in part: "An airport operated by a city and county may require a rental car company . . . to collect a fee from its customers on behalf of the airport for the use of an airport-mandated common use busing system or light rail transit system operated for the movement of passengers between the terminal and a consolidated on-airport rental car facility."

[3] We summarily denied Turo's petition after preliminary briefing. Turo then filed a petition for review in our Supreme Court, which was granted.

DISCUSSION

I.

The term "rental car company" is not defined in the Government Code, but it is defined in nearly identical language in three separate California statutes to mean a person or entity in the business of renting passenger vehicles to the public. In the chapter of the Civil Code governing "Rental Passenger Vehicle Transactions," "[r]ental company" is defined as "a person or entity in the business of renting passenger vehicles to the public." (Civ. Code, § 1939.01, subd. (a).) In the Consumer Automotive Recall Safety Act (Veh. Code, § 11750 et seq.), "rental car company" is defined as "a person or entity in the business of renting passenger vehicles to the public in California." (Veh. Code, § 11752, subd. (f).) And in the portion of the Insurance Code regulating the sale of insurance by "Car Rental Agents," a "[r]ental car company" is "any person in the business of renting vehicles to the public." (Ins. Code, § 1758.89, subd. (d).) From this we conclude, and the parties agree, that for purposes of section 50474.1 of the Government Code, Turo is a "rental car company" if it is in the business of renting vehicles to the public.

Because the trial court's summary adjudication order presents a question of statutory interpretation and the application of that statute to undisputed facts, we review the order de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082 (*MacIsaac*).) We must " 'determine the Legislature's intent so as to effectuate the law's purpose.' " (*Skidgel v. California Unemployment Ins.*

---

The matter was transferred back to us with instructions to direct the superior court to show cause, which we have done. The matter has now been fully briefed, and we have had the benefit of oral argument.

*Appeals Bd.* (2021) 12 Cal.5th 1, 14 (*Skidgel*).) We begin by looking to the words of the statute itself. (*Ibid.*; *MacIsaac, supra*, 134 Cal.App.4th at p. 1082 [statutory language is the "most reliable indicator" of legislative intent because it " ' "has successfully braved the legislative gauntlet" ' "].) We construe those words in context, giving them " 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac, supra*, 134 Cal.App.4th at p. 1083.) Courts appropriately refer to dictionary definitions "to ascertain the ordinary, usual meaning of a word." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122,) We harmonize clauses and sections of a statutes " 'by considering them in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls.' " (*Skidgel, supra,* 12 Cal.5th at p. 14, quoting *People v. Cole* (2006) 38 Cal.4th 964, 975.)

## II.

There is no dispute that Turo's entire business consists of *enabling* the public to *rent* motor vehicles. Turo points to various dictionary definitions of the word "rent." (See Black's Law Dictionary (11th ed. 2019) at p. 1551 [defining the verb "rent" as "[t]o pay for the use of another's property"]; see also Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/rent (June 28, 2022) [defining the noun "rent" as "the amount paid by a hirer of personal property to the owner for the use thereof" and the verb "rent" as "to grant the possession and enjoyment of in exchange for rent" and "to take and hold under an agreement to pay rent"].) Turo argues that because it does not own or possess or control the vehicles listed on its website, and has no authority to grant the possession and enjoyment of those vehicles to others, it does not itself rent vehicles to the public. Turo

further argues that because it does not rent vehicles to the public, it cannot be in the business of renting vehicles to the public.

We conclude that Turo's reading of the statutes is correct.

That Turo is not a rental car company is supported by several provisions in the chapter of the Civil Code governing Rental Passenger Vehicle Transactions. (See Civ. Code, § 1939.01, subd. (a) [" '[r]ental company' means a person or entity in the business of renting passenger vehicles to the public"].) In that chapter of the Civil Code, a "[r]enter" is defined as a person "obligated under a contract for the *lease or hire of a passenger vehicle from a rental company* for a period of less than 30 days." (*Id.*, subd. (b), italics added.) By describing a renter as leasing or hiring a vehicle *from a rental company*, the definition presumes that a rental company contracts with renters for the lease or hire of vehicles that the rental company owns or controls. Here, however, Turo does not own or control the vehicles.

Other provisions in the Civil Code similarly suggest that Turo is not a "[r]ental company" under Civil Code section 1939.01. For example, later in this chapter, the Civil Code sets limits on the amount of a renter's liability to a rental company for damage to a rented vehicle, including "[t]he estimated cost of parts which the rental company would have to pay to replace damaged vehicle parts"; "[t]he estimated cost of labor to replace damaged vehicle parts"; and "[a]ctual charges for towing, storage, and impound fees paid by the rental company." (Civ. Code, § 1939.05, subd. (a).) These limits presume that the rental company owns or controls the rented vehicle, which is not the case for Turo. The Civil Code defines "[d]amage waiver" as "a rental company's agreement not to hold a renter liable for all or any portion of any damage or loss related to the rented vehicle, any loss of use of the rented

6

vehicle, or any storage, impound, towing, or administrative charges." (Civ. Code, § 1939.01, subd. (g).) A damage waiver presumes that the rental company owns or otherwise has a property interest in the rented vehicle, which is not the case for Turo's rentals. In contrast, Turo offers "vehicle protection options" for vehicle owners (whom Turo calls "hosts") and renters (whom Turo calls "guests"), which cover what an owner is entitled to, and what a renter is responsible for, if a vehicle is damaged during a rental. And another provision in this chapter, Civil Code section 1939.23, subdivision (b), allows rental companies to "equip[ ] rental vehicles" with GPS-based technology to provide navigation assistance, and electronic surveillance technology that allows the remote locking or unlocking of the vehicle or that allows the company to provide roadside assistance. The equipping of vehicles by a rental company implies that the company owns or otherwise controls the vehicles, again not the case for Turo.

We are not aware of any published case in which a California court has held that an entity is "in the business of renting passenger vehicles to the public" for the purposes of Civil Code section 1939.01, subdivision (a), when the entity rents vehicles that it does not own or otherwise control. Still, Real Parties argue that Turo is in the business of renting vehicles because Turo derives revenue from its customers' rental transactions, and the rental activity from which it derives revenue constitutes Turo's entire business. We find it instructive to consider *Sentry Select Ins. Co. v. Fidelity & Guaranty Ins. Co.* (2009) 46 Cal.4th 204, a case discussed by the trial court and by the parties in their appellate briefs. In *Sentry Select*, our Supreme Court recognized that courts disagree whether being " 'in the business of renting' " commercial vehicles depends upon the frequency with which an entity engages in the rental of commercial vehicles or the factual circumstances

7

surrounding the lease of a particular commercial vehicle. (*Id.* at pp. 213-214 [discussing a former version of Ins. Code, § 11580.9, subd. (b)].) There was apparently no dispute, however, that in order to be in the business of renting, the entity must rent out vehicles that it owns or controls. In each of the cases discussed in *Sentry Select*, the entity in question owned the vehicles that were rented. (See *Travelers Indemnity Co. v. Maryland Casualty Co.* (1996) 41 Cal.App.4th 1538, 1546-1547 [considering whether renting or leasing activities were "a regular part of the insured's business" where the insured owned commercial trailers that were regularly used by independent contractors]; *Western Carriers Insurance Exchange v. Pacific Insurance Co.* (1989) 211 Cal.App.3d 112, 117 [considering whether " 'bargained exchange' " for use of vehicle owned by insured company can be construed as a lease or a rental]; *Mission Insurance Co. v. Hartford Accident and Indemnity Co.* (1984) 160 Cal.App.3d 97, 100-101 [considering whether a vehicle owner's leasing of vehicle was for a commercial purpose].) Similarly, the entity at issue in *Sentry Select, supra,* 46 Cal.4th 204 was a carrier company that owned a fleet of commercial vehicles and routinely leased most of them to independent contractors under a standard lease agreement (*id.* at p. 214) and our Supreme Court concluded that the rentals were "a regular and significant part of the insured's business activities." (*Ibid.*)

As a general matter, the phrase "to be in the business of renting" entails engaging in acts of renting. Thus, *Village of Bedford Park v. Expedia, Inc.* (7th Cir. 2017) 876 F.3d 296 (*Bedford Park*) holds that online travel agencies like Expedia are not " 'engaged in the business of renting' " hotel rooms because they do not own or control the hotel rooms and cannot rent them to customers. (*Id.* at p. 305.) In *Bedford Park*, as here, a statute applied to entities " 'engaged in the business of renting,' " and did not define

8

the phrase. (*Id.* at pp. 301, 305.) The court considered dictionary definitions of "rent," determined that "renting implies ownership and granting possession of property," and concluded that since the travel agencies did not own hotels or hotel rooms, they could not independently grant customers access to those rooms. (*Id.* at p. 305.) The court considered the meaning of the phrase " 'engaged in the business' " as it was used in other contexts, such as products liability, where "sellers are not held strictly liable unless they are engaged in the business of selling the defective product." (*Ibid.*) "In that context, a seller is only engaged in the business of selling if he does it routinely or commercially. The [online travel agencies] do not rent hotel rooms, so of course they do not do so routinely or commercially[, and] are not engaged in the business of renting rooms and are not subject to" the ordinances at issue. (*Ibid.*) The same could be said here with respect to Turo and the statutes that define rental car companies.[4]

Real Parties argue that we should follow the reasoning of the federal district court in *Crawford v. Uber Technologies, Inc.* (N.D.Cal. 2018) 2018 WL 1116725 (*Crawford*). There, in seeking judgment on the pleadings, Uber argued that it was "not an entity 'primarily engaged in the business of transporting people' " for the purposes of the federal Americans with

---

[4] The Legislature has demonstrated that it can craft broad statutory definitions to cover entities that facilitate an activity rather than engaging in it themselves. For example, in the Vehicle Leasing Act (Civ. Code, § 2985.7 et seq.), "[l]essor" is defined as "a person who is engaged in the business of leasing, offering to lease or *arranging the lease of* a motor vehicle under a lease contract." (Civ. Code, § 2985.7, subd. (b), italics added.) Similarly, in the Vehicle Code, "[d]ealer" is defined to include a person "engaged . . . in the business of selling vehicles or . . . *otherwise dealing in vehicles, whether or not the vehicles are owned by the person*." (Veh. Code, § 285, subd. (b), italics added.)

Disabilities Act. (*Id.* at *3.) Uber's argument rested on the undisputed fact that drivers, not Uber, convey passengers in vehicles that Uber does not own. (*Ibid.*) In denying Uber's motion, the district court observed that nothing in the relevant statute requires that an entity own or lease its own vehicles in order to qualify as a private entity providing taxi service. (*Id.* at *4.) Real Parties argue that, just as nothing in the statute at issue in *Crawford* required that an entity own its own vehicles, nothing in the statutory definitions of "rental company" or "rental car company" require that a rental car company have a possessory interest in the vehicles its rents or have the right to control the vehicles. Real Parties argue that to interpret the statutes as including a requirement that a rental company be in the business of renting vehicles *that it owns or controls* is to effectively add words to the statutes, which we must not do. (See *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 794 [" '[w]ords may not be inserted in a statute under the guise of interpretation' "].) This argument is not persuasive, because the word "rent," which does appear in the statute, implies ownership or control of the item rented. Our interpretation of "a person or entity in the business of renting passenger vehicles to the public" as applying only to the business of renting vehicles the person or entity owns or controls therefore does not require the addition of any words to the statutes. (Civ. Code, § 1939.01, subd. (a); Veh. Code, § 11752, subd. (f); Ins. Code, § 1758.89, subd. (d).)

Real Parties also point out that the court in *Crawford*, unpersuaded by Uber's attempt to rely on *Bedford Park*, concluded that Uber's analogy to Expedia was "strained": "Expedia facilitates a transaction that is not dependent on the service it offers. Hotels have rented rooms to guests long before the creation of expedia.com and can do so without the website's

10

assistance. By contrast, without Uber and its competitors, non-professional drivers would find it difficult—if not impossible—to locate a rider and transport her to the destination of her choice for monetary compensation. To say that Uber merely *facilitates* connections between 'both sides of the two-sided ridesharing market' obscures the fact that Uber arguably *created* a market for this type of transportation." (*Crawford*, *supra*, 2018 WL 1116725 at *4.) We agree that Turo's business model is unlike Expedia's, and may well be more like Uber's, but that is not determinative. It seems as though neither company is a perfect analogy to Turo, which appears to have some traits in common with both: for example, the court in *Crawford* observed that Expedia does not control how the hotels listed on its website price their rooms, just as Turo apparently does not control the prices at which car owners list their vehicles for rental. (*Ibid.*) In any event, the primary issue in *Crawford* concerned the control that Uber exercised over its drivers, an issue that the district court concluded could not be determined on the pleadings. (*Id.* at *4.) The court observed that there were "significant factual questions as to Uber's degree of control over its drivers for employment law purposes," as well as questions about whether Uber controlled how its drivers dealt with riders. (*Ibid.*) The question we face is different and more focused: is Turo a rental car company for the purpose of section 50474.1 of the Government Code. Interpreting that statute as incorporating the current statutory definitions of "rental company" and "rental car company" in the Civil Code, Vehicle Code, and Insurance Code, we conclude that the answer is "no."

Our conclusion that a rental car company owns or otherwise controls the vehicles that it rents is further supported by the definition of "[p]ersonal vehicle sharing programs," or PVSP's, in the Insurance Code. The Insurance

11

Code defines " '[p]ersonal vehicle sharing' " as the "use of private passenger motor vehicles by persons other than the vehicle's owner, in connection with a personal vehicle sharing program" (Ins. Code, § 11580.24, subd. (b)(1)), and defines " '[p]ersonal vehicle sharing program' " as "a legal entity qualified to do business in the State of California engaged in the business of facilitating the sharing of private passenger vehicles for noncommercial use by individuals within the state." (*Id.*, subd. (b)(2).) The Insurance Code imposes different requirements on PVSP's, defined in section 11580.24 of the Code, and rental car companies, defined in section 1758.89 of the Code, as persons or entities "in the business of renting passenger vehicles to the public in California." (Ins. Code, § 1758.89, subd. (d).) A PVSP must "provide insurance coverages for the vehicle and operator of vehicle that are equal to or greater than the insurances coverages maintained *by the vehicle owner*" and in any event "shall not provide liability coverage less than three times the minimum insurance requirements for private passenger vehicles." (Ins. Code, § 11580.24, subd. (c)(1), italics added.) Rental car companies, in contrast, are not required to exceed the statutory minimum liability coverage for private passenger vehicles. (See Veh. Code, § 16000 et seq. ["Financial Responsibility Laws"]; *Philadelphia Indemnity Insurance Co. v. Montes-Harris* (2006) 40 Cal.4th 151, 155 [noting that supplemental liability policy in effect at the time of a rental transaction was "in excess of the minimum statutory amounts . . . required under the Financial Responsibility Law"].) Those requirements reflect that a PVSP, unlike a rental car company, does not own the vehicles at issue.

Further, the Insurance Code's definition of PVSP is incorporated in the Vehicle Code's Consumer Automotive Recall Safety Act, which imposes different requirements on a PVSP than on a "rental car company," defined as

a "person or entity in the business of renting passenger vehicles to the public in California" (Veh. Code, § 11752, subd. (f)). The different requirements reflect the fact that a rental car company owns or otherwise controls the vehicles it rents, unlike a PVSP. Accordingly, once a rental car company receives notice of a manufacturer's recall, it generally may not rent a vehicle subject to recall until the recall repair has been made. (Veh. Code, § 11754, subds. (a) & (b).) But once a PVSP has notice of a recall, the PVSP may not "facilitate or otherwise arrange for transportation" with a recalled vehicle "until after any recall notices for that vehicle no longer appear in the recall database provided by the National Highway Traffic Safety Administration." (Veh. Code, § 11754, subd. (c).) This distinction reflects the fact that a rental car company has control over the vehicles in its fleet in a way a PVSP does not.[5]

In sum, although the Government Code does not expressly define the term "rental car company," we conclude that Turo is not a "rental company" or "rental car company" as that term is defined in the statutes discussed above, and not a rental car company for the purposes of Government Code

---

[5] In section 11754 of the Vehicle Code, the Legislature expressly stated that its addition of distinct provisions governing the obligations of PVSP's with respect to recalls "shall not apply in any manner to pending litigation" (Veh. Code, § 11754, subd. (d)), and further stated that the section "does not affect the determination of whether or not a company is a rental car company or whether or not a company is a personal vehicle sharing company." (*Id.*, subd. (e).) Nevertheless, the distinct obligations imposed on rental car companies and PVSP's in both the Insurance Code and the Vehicle Code reflect the Legislature's intent that a "rental car company" will have owner-like control over the vehicles that are rented. The statute appears to leave open the possibility that a given entity could operate as a PVSP with respect to some transactions and as a rental car company with respect to others.

section 50474.1.  The trial court erred in concluding otherwise, and we reverse.

## DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue, directing respondent court to vacate the portion of its order of April 23, 2020, granting Real Parties' motion for summary adjudication of Turo's first cause of action for declaratory judgment in its corrected first amended cross complaint, and to enter a new order denying said motion. Costs are awarded to petitioner.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Mayfield, J.[*]


A160200, *Turo, Inc. v. Superior Court*

_____

[*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court:  San Francisco County Superior Court

Trial Judge:  Hon. Ethan P. Schulman

Cooley LLP, Michael G. Rhodes, Matthew D. Brown, Benjamin H. Kleine, Bethany C. Lobo, Ashley K. Corkery, Julie M. Veroff, Elizabeth B. Prelogar, for Petitioner

No appearance by Respondent

Dennis J. Herrera, City Attorney, Yvonne R. Meré, Chief Attorney, Owen J. Clements, Kristine A. Poplawski, Marc Price Wolf, Deputy City Attorneys, for Real Parties in Interest

A160200, *Turo, Inc. v. Superior Court*